IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| DAVINA TREADWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  2:09-cv-02371-BBD-cgc |
| | ) | |
| AMERICAN AIRLINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

_____

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant American Airlines, Inc.'s ("Defendant") Motion for Summary Judgment filed on April 1, 2010.  (D.E. #23.)  Plaintiff Davina Treadwell ("Plaintiff") filed a response in opposition to the motion on May 12, 2010, after requesting and receiving leave to extend the time for her response.  On May 24, 2010, Defendant filed a reply, after requesting and receiving leave to file a reply.  For the reasons stated herein, the Court **GRANTS** Defendant's motion for summary judgment.

Also before the Court is Defendant's Motion to Strike the Affidavits of Cynthia Hymel and Libby Parks filed on May 24, 2010.  (D.E. #32.)  Plaintiff filed a response in opposition to the motion to strike on June 7, 2010.  For the reasons stated herein, the Court **STRIKES AS MOOT** Defendant's motion to strike.

**I.     FACTS**

In March 1988, Defendant hired Plaintiff, a Caucasian female.  (Ex. L to Def.'s Mot for Summ. J.; Ex. A to Def.'s Mot for Summ. J., Apr. 10, 2008 Dep. of Davina Treadwell ("Apr. 10, 2008 Treadwell Dep.") 18-19, 24; Jan. 11, 2009 Dep. of Davina Treadwell ("Jan. 11, 2009

Treadwell Dep.") 27.)  In 2004, Plaintiff became a Customer Service Manager ("CSM") for Defendant at the Memphis International Airport in Memphis, Tennessee.  (Apr. 10, 2008 Treadwell Dep. 27.)  On Saturday, February 18, 2006, Plaintiff was the CSM on duty when Memphis experienced an ice storm.  (Jan. 11, 2009 Treadwell Dep. 20; Apr. 10, 2008 Treadwell Dep. 85-86.)  During Plaintiff's work shift that day, passengers boarded a Super-80 aircraft bound for Dallas Texas, which was pushed away from its gate for de-icing.  (Apr. 10, 2008 Treadwell Dep. 85-86.)  Malcom Horton was the Crew Chief on duty that day.  Horton was responsible for directing the unionized employees on "the ramp" and was also responsible for de-icing the Super-80 aircraft.  (Apr. 20, 1008 Treadwell Dep. 35-36; Def.'s Statement of Undisputed Material Facts in Supp. of its Mot. for Summ. J. ("SOF") 5; Pl.'s Resp. to Def.'s SOF and Additional SOF 5.)  Although Plaintiff instructed Horton to de-ice the aircraft, he did not assist the ramp crew in spraying the aircraft.  (Apr. 10, 2008 Treadwell Dep. 111, 161.)  The pilot of the Super-80 aircraft, Captain Tim Thomas, also reported that Horton did not cooperate with his instructions on de-icing the aircraft.  (Ex. E to Def.'s Mot for Summ. J.)  As a result of the de-icing delays, passengers sat in the plane on the tarmac for approximately three hours.  (Id.; Apr. 10, 2008 Treadwell Dep. 200-01.)  Because the Super-80 aircraft blocked the gate during the de-icing period, five other aircraft backed up waiting to use the gate to de-board passengers.  (Apr. 10, 2008 Treadwell Dep. 85-86.)  Defendant argues that, as Plaintiff was the highest-ranking manager on duty during the ice storm and was responsible for the gate and ramp (Apr. 10, 2008 Treadwell Dep. 290), it was Plaintiff's responsibility as the manager to get her employees to follow her instructions.

In the days following the ice storm, Plaintiff's supervisor, Vicki Rodriguez, headed an investigation into the reason for the lengthy delays that occurred on February 18, 2006.  (Id. at

209-210, 215; Ex. K to Def.'s Mot for Summ. J., Final Advisory.)  As a result of that inquiry, Rodriguez gave Plaintiff a Final Advisory, which terminated Plaintiff from her employment. (Ex. K to Def.'s Mot for Summ. J., Final Advisory.)  The Final Advisory stated: "Due to your lack of leadership, three separate departures (AA2423, AE4455 and AE3909 and 1 arrival (AE3909) incurred lengthy delays and service failures. . . . Your actions . . . constitute unsatisfactory performance and cause me to question your ability to exhibit leadership skills and perform the duties of a Customer Service Manager.  Your actions as described above also constitute a violation of AA Rules of Conduct, Rules 12 and 24 . . . ."  (Id.)

Plaintiff contends that she should not have been disciplined for the events of February 18, 2006, but if she were disciplined, she should have been afforded a lesser form of punishment. Specifically, Plaintiff disputes the facts relied upon by Defendant in its decision to terminate Plaintiff from employment.  Most of the facts which Plaintiff disputes relate to the events that occurred on February 18, 2006.  For example, Plaintiff contends, in contrast to the evidence Defendant cites, that she called her manager, Vicki Rodriguez, for assistance during the ice storm and that she held additional employees over beyond their regular shift to assist on February 18, 2006.  (Apr. 10, 2008 Treadwell Dep. 101-02; Treadwell Aff. ¶ 8-9.)  Plaintiff also disputes Defendant's contention that she was previously counseled for poor performance. (Treadwell Aff. ¶ 7.)

On May 13, 2009, Plaintiff filed a claim of discrimination in violation of the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-101 et seq., and a breach of contract claim against Defendant in the Circuit Court for Shelby County (Tennessee).  On June 15, 2009, Defendant removed this cause of action to the United States District Court for the Western District of Tennessee.  On April 1, 2010, Defendant filed the instant motion for summary judgment, arguing

that Plaintiff cannot establish a prima facie case of discrimination or show that Defendant's legitimate, non-discriminatory reasons for her discharge are a pretext for discrimination. Defendant further contends that Plaintiff also cannot establish a breach of contract because Plaintiff's employment with Defendant was at-will. In response, Plaintiff argues that material facts are in dispute with regard to her discrimination claim but impliedly concedes her breach of contract claim.

## II.     LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Thaddeus-X v. Blatter, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the

nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10A Charles A. Wright et al., Federal Practice and Procedure § 2727 (3d ed. 1998).

Once a properly supported motion for summary judgment has been made, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### III.   ANALYSIS

#### A. Motion to Strike

Before the Court can address the merits of Defendant's motion for summary judgment, it must first address Defendant's motion to strike. In support of Plaintiff's opposition to Defendant's motion for summary judgment, Plaintiff submitted the affidavits of Cynthia Hymel and Libby Parks (hereinafter, "Hymel and Parks affidavits"). Defendant argues that these affidavits should be stricken based on Plaintiff's failure to disclose the affiants as witnesses at any time during the discovery process in violation of Federal Rule of Civil Procedure 26. Defendant contends that the exclusion of the Hymel and Parks affidavits is automatic and mandatory under Federal Rule of Civil Procedure 37(c)(1). After evaluating the affidavits at issue, the Court **STRIKES AS MOOT** Defendant's motion to strike, because even if the affidavits were properly before the Court, as discussed further herein, the Court's decision would be unaltered.

### B. Tennessee Human Rights Act

Defendant first argues that it is entitled to summary judgment on Plaintiff's THRA discrimination claim. The Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101, et seq., prohibits discrimination in employment on the basis of race, creed, color, religion, sex, age, or national origin. Tenn. Code Ann. § 4-21-401(a). An analysis of race discrimination claims under the THRA parallels that of similar claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq. See Richardson v. CVS Corp., No. 1:00-CV-361, 2001 U.S. Dist. LEXIS 25506, at *31 (E.D. Tenn. Aug. 30, 2001); Parker v. Warrant County Utility Dist., 2 S.W.3d 170, 172-73 (Tenn. 1999); see also Tenn. Code Ann. § 4-21-101(a)(1) (stating that the purpose and intent of the THRA is to "provide for execution within Tennessee of the policies embodied in the federal Civil Rights Act of 1964, 1968 and 1972 . . . ."). To prevail on a claim of disparate treatment under Title VII, a plaintiff must show discriminatory motive by the employer. Such proof can be established by direct evidence or may be inferred from a prima facie showing of discrimination. See Huguley v. General Motors Corp., 52 F.3d 1364, 1370 (6th Cir. 1995).

#### 1. Direct Evidence

Plaintiff first contends that she has direct evidence of race discrimination. Under the "direct evidence" method of proving discrimination, a plaintiff must show that the employer's adverse employment action was motivated by unlawful discriminatory intent. Price Waterhouse v. Hopkins, 490 U.S. 228, 242, 258 (1984); Weberg v Franks, 229 F.3d 514, 522 (6th Cir. 2000); Bartlik v. United States Dep't of Labor, 73 F.3d 100, 103 n. 5 (6th Cir. 1996). Plaintiff argues that the Hymel and Parks affidavits constitute direct evidence. As noted previously, Defendant moved to strike these affidavits based on Plaintiff's failure to disclose the names of these

witnesses at any point in discovery. Both affidavits identically state the following as the sole basis for the affiant's knowledge of any alleged discrimination: "During my employment, I witnessed unequal treatment of American Airlines towards Caucasians in comparison to other races." (Aff. of Cynthia Hymel (Hymel Aff.") ¶ 5; Aff. of Libby Parks ("Parks Aff.") ¶ 5.) Even if the Court were to consider the affidavits, the Court finds the Hymel and Parks affidavits to be conclusory and based on the affiants' subjective beliefs. See Mitchell v. Toledo Hosp., 964 F.2d 577, 584-85 (6th Cir. 1992) (stating that "rumors, conclusory allegations and subjective beliefs . . . are . . . insufficient evidence to establish a claim of discrimination as a matter of law") (citations omitted). As such, the affidavit testimony is insufficient as a matter of law to constitute direct evidence.

### 2. Circumstantial Evidence

In the alternative, Plaintiff argues that she can prove discrimination through circumstantial evidence. Defendant, however, argues that Plaintiff's complaint should be dismissed because Plaintiff cannot carry her burden of establishing a prima facie case of discrimination and also cannot show that Defendant's legitimate, non-discriminatory reasons for Plaintiff's discharge from employment are pretext. In order to establish a prima facie case of race discrimination, a plaintiff must demonstrate that: "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004) (citing Talley v. Bravo Pitino, 61 F.3d 1241, 1246 (6th Cir. 1995)).

In cases of so-called "reverse discrimination," where a member of the majority is claiming discrimination, the Sixth Circuit Court of Appeals has adopted a heightened standard of

proof for plaintiffs.[1] Under this heightened standard, a plaintiff is required to demonstrate not only that he or she is a member of a protected class but that "background circumstances [exist] support[ing] the suspicion that the defendant is that unusual employer who discriminates against the majority." Sutherland v. Mich. Dep't of Treasury, 344 F.3d 603, 614 (6th Cir. 2003); see Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir. 1985).[2]

Once a plaintiff has established this prima facie case, the burden shifts under the to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action. Sutherland, 344 F.3d at 614-15 (citing Tex. Dep't of Cmty. Affairs v. Burdine 450 U.S. 248, 253 (1981)). If the defendant can meet this burden, the plaintiff must then offer evidence to demonstrate that this proffered reason is pretext. Id.

In this case, neither party disputes the second and third prongs of Plaintiff's prima facie case—that Plaintiff was qualified for the job and that Plaintiff suffered an adverse employment action. Nor does either party dispute that Defendant can meet its burden to offer a legitimate, non-discriminatory reason for the adverse employment action. Thus, the Court's analysis will focus on whether genuine facts are in dispute as to the first and last prongs of Plaintiff's prima facie case—whether background circumstances exist to support the suspicion that Defendant was

---

[1] The Court notes that the Sixth Circuit appears to have forgotten its own doubts about the validity of this heightened standard and over time has merely adopted this more stringent test for white and male plaintiffs. Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 801 n.7 (6th Cir. 1994) ("We have serious misgivings about the soundness of a test which imposes a more onerous standard for plaintiffs who are white or male than for their non-white or female counterparts."). Nevertheless, this Court is bound by Sixth Circuit precedent.

[2] Both Plaintiff and Defendant agree that this heightened standard applies to Plaintiff's THRA claim of reverse discrimination. While the Court notes that at least some district courts have applied the Sixth Circuit's heightened standard for reverse discrimination to THRA claims, see e.g., Stafford v. Sanford, No. 4:06-cv-35, 2007 U.S. Dist. LEXIS 48745, at *20-32 (E.D. Tenn. 2007); Osborne v. City of Franklin, No. 3:04-c00493, 2005 U.S. Dist. LEXIS 46276, at *17-21 (M.D. Tenn. 2005), the Court declines to rule on this issue as it is not properly before the Court. Therefore, the Court will assume, without holding, that the heightened standard applies to THRA claims. The Court notes that even if a heightened standard does not apply to reverse discrimination claims under the THRA, Defendant would still be entitled to summary judgment because Plaintiff has failed to meet the fourth prong of her prima facie case.

that unusual employer who discriminates against the majority and whether Defendant treated differently similarly situated employees of a different race.

### a. First Prong of Prima Facie Case: Background Circumstances

In its motion for summary judgment, Defendant first argues that Plaintiff cannot establish the first prong of the prima facie case for reverse discrimination because no evidence exists to meet the heightened prima facie standard in reverse discrimination claims. As previously noted, in the Sixth Circuit, the plaintiff in a reverse discrimination case must identify evidence to "support the suspicion that the defendant is that unusual employer who discriminates against the majority." Sutherland, 344 F.3d at 614. This burden can be satisfied through statistical information that reveals a relationship between promotion and hiring patterns and race. Id. The Sixth Circuit has also held that the plaintiff meets his or her burden by establishing that the individual making the employment decisions is a minority. Arendale v. City of Memphis, 519 F.3d 587, 603-04 (6th Cir. 2008) (citing Zambetti v. Cuyahoga Cmty. College, 314 F.3d 249, 257 (6th Cir. 2002)).

To meet this prong, Plaintiff again presents the Hymel and Parks affidavits and again relies soley on the same conclusory statement presented in those affidavits previously discussed above. Such conclusory and subjective beliefs, devoid of factual support, are not enough to create a genuine issue of material fact regarding background circumstances. See Mitchell, 964 F.2d at 584-85. Therefore, Plaintiff has failed to demonstrate the existence of the "background circumstances" required by the heightened pleading standard of her reverse discrimination case.

### b. Fourth Prong of Prima Facie Case: Similarly Situated Individuals

Next, the Court must analyze whether Plaintiff can prove that she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-

protected employees. In this case, Plaintiff does not argue that she was replaced by someone of a different race but instead argues that Lula Ryan,[3] Tom Biddell,[4] Malcolm Horton, James Watkins, and George Sims[5] are African-American individuals who are similarly situated to Plaintiff but who were treated differently. Plaintiff further argues that her conduct on February 18, 2006 did not rise to a level meriting discipline, but that if it did, then she should have received a lesser form of discipline. Specifically, Plaintiff asserts that these individuals were allowed to "step down" or retire due to performance issues, while she was not allowed to step down after the events that occurred during the ice storm, despite requesting that she be allowed to do so. (Apr. 10, 2008 Treadwell Dep. 216-17.)

In assessing the fourth prong of a prima facie case of discrimination, the Sixth Circuit has instructed that to be similarly situated, a plaintiff does not need to "demonstrate an exact correlation with the employee receiving more favorable treatment . . . , rather . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in all of the *relevant* aspects." McMillan v. Castro, 405 F.3d 405, 414 (6th Cir. 2005) (citing Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998)) (internal quotation marks and citation omitted) (emphasis in original). Generally in cases alleging disparate disciplinary action, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards[,] and have engaged in the same conduct without such differentiating or mitigating circumstances

---

[3] The parties have presented this individual's name as both Lula Ryan and Lula Rhyan.

[4] The parties have presented this individual's name as both Tom Biddell and Thom Beddell.

[5] The Court will address only those comparators asserted in Plaintiff's Response to Defendant's Motion for Summary Judgment. For her comparator allegations, Plaintiff again presents the Hymel and Parks affidavits in support of her argument that Ryan, Biddell, Watkins, and Sims are similarly situated employees. The Court will disregard these affidavits as Hymel and Parks have not demonstrated the personal knowledge necessary for their statements to be considered as evidence.

that would distinguish their conduct or the employer's treatment of them for it." Mitchell, 964 F.2d at 583. In comparing the treatment of persons within and outside statutorily-protected classifications, the Court "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." Ercegovich, 154 F.3d at 352. The plaintiff bears the ultimate burden of showing that any alleged comparators are, in fact, similarly situated. See Mitchell, 946 F.2d at 583 ("Plaintiff produced no facts to establish that the two white employees she identified as not having been fire were 'similarly situated in all respects.'")

First Plaintiff alleges that she is similarly situated to Lula Ryan and Tom Biddell. It is undisputed that Ryan and Biddell were African-American employees of Defendant, who were off-duty CSMs on the day of the ice storm. (Jan. 11, 2008 Treadwell Dep. 27-28, 49-50, 55-58.) As to Biddell, Plaintiff testified that he told her that he "had to step down" from his CSM position. (Id. at 50-55.) Plaintiff, however, also testified that she has no personal knowledge of when Biddell was allowed to step down or why specifically Biddell "had to" step down. (Id.) Although Biddell and Plaintiff both held positions as CSMs, Plaintiff has not presented sufficient evidence to support her claim that Biddell and Plaintiff engaged in similar misconduct. Without such information, the Court cannot conclude that the two are similarly situated.

As to Ryan, Plaintiff testified that "other people had told me" that "she had been allowed to step down as [sic] – that some issues came up with her, that she was in trouble with some management problems, and she was allowed to step down. I do not know who the manager was at that point." (Jan. 11, 2009 Treadwell Dep. 59.) In her affidavit, Plaintiff states: "I am aware that Lula Ryan . . . [was] allowed to step down from [her] position[] for performance issues." (Treadwell Aff. ¶ 14.) Plaintiff's assertion that she "was aware of" Ryan's circumstances

11

contrasts with Plaintiff's other statements in her affidavit which claim that she has "personal knowledge" of other events. (Treadwell Aff. ¶ 13-15.) As such, the Court cannot equate Plaintiff's assertions that she "was aware of" an event with Plaintiff having personal knowledge of that event. Plaintiff's lack of personal knowledge is further illustrated by the fact that Ryan stepped down before Plaintiff began her employment in Memphis. (Jan. 11, 2009 Treadwell Dep. 54.) Without any personal knowledge of Ryan's alleged problems with management and without any specific evidence relating to those problems, Plaintiff has failed to meet her burden of showing that this conduct is similar to hers. In her affidavit, Plaintiff further states that she has personal knowledge of the fact that Ryan was the CSM on duty one week before the ice storm when the wing tip of an aircraft collided with a fuel truck. (Treadwell Aff. ¶ 15.) Plaintiff argues that Ryan's conduct was similar to hers in that a serious safety violation—the wing-tip collision—occurred while Ryan was in charge. Plaintiff, however, failed to submit sufficient facts regarding this incident such that the Court can determine Ryan's role in, or actions contributing to, the collision such that Ryan's conduct would be similar to that of Plaintiff's. As with Biddell, Plaintiff has not presented sufficient evidence to support her claim that Ryan and Plaintiff engaged in similar conduct. Therefore, the Court cannot conclude that Ryan and Plaintiff are similarly situated.

Second, Plaintiff argues that she is similarly situated to Malcolm Horton. It is undisputed that Horton was an African-American employee of Defendant, who was on duty as Crew Chief on the day of the ice storm. (Treadwell Aff. ¶ 15; Apr. 10, 2008 Treadwell Dep. 12.) Horton was responsible for directing the unionized employees on "the ramp" and for de-icing the Super-80 aircraft. (Apr. 10, 2008 Treadwell Dep. 35-36; Def.'s SOF 5; Pl.'s Resp. to Def.'s SOF and Additional SOF 5.) It is also undisputed that at some point after the ice storm, Horton was

allowed to retire instead of being terminated. (Treadwell Aff. ¶ 13.) Plaintiff first points to the wing-tip collision as proof of similar conduct, but Plaintiff again failed to submit sufficient facts to enable the Court to determine whether Horton was responsible for the collision in any way. Second, even though Plaintiff has presented evidence to show that her conduct was possibly similar to that of Horton's during the ice storm, Horton and Plaintiff are not similarly situated because of at least two significant differences. First, Horton and Plaintiff did not hold the same position, nor is there sufficient evidence in the record to suggest that such different positions are sufficiently similar as to render them comparable positions. See Mitchell, 964 F.3d at 583. Furthermore, there is no evidence that the two shared the same supervisor or were subject to the same standards. Secondly, and most critically, Plaintiff alleges that Horton was allowed to retire,[6] but it is undisputed that at the time Plaintiff received her Final Advisory, she was not of retirement age. (Jan. 11, 2009 Treadwell Dep. 67.) As such, Horton and Plaintiff are not similarly situated. See Nelson v. General Electric Co., 2 F. App'x 425, 431 (6th Cir. 2001); see, e.g., Ramon v. Cont'l Airlines Inc., 153 F. App'x 257, 259-60 (5th Cir. 2005) (holding that a plaintiff who is not of retirement age and a comparator who is of retirement age are not similarly situated where the comparator is allowed to voluntarily retire while the plaintiff is terminated).

Next, Plaintiff contends that she is similarly situated to James Watkins. It is undisputed that James Watkins was an African-American Station Manager employed by Defendant. (Jan. 11, 2009 Treadwell Dep. 27, 65; Def.'s SOF 27; Pl.'s Resp. to Def.'s SOF and Additional SOF 27.) In support of her position, Plaintiff testified that Watkins was allowed to retire in lieu of an involuntary termination after he "signed some environmental things that he did not have the authority to sign." (Jan. 11, 2009 Treadwell Dep. 66.) Although Plaintiff admits that she and

---

[6] Defendant disputes whether Horton was allowed to retire. (See Ex. A to Def.'s Reply Brief in Support of Def.'s Mot. for Summ. J.)

13

Watkins did not hold equal or similar positions (id.), Plaintiff nevertheless asserts that she and Watkins are similarly situated. Even if Plaintiff could show that their conduct was similar, Watkins and Plaintiff are dissimilar in every other respect. First, Watkins and Plaintiff were employed not only in different positions but at different levels of responsibility, with Watkins being a member of management. (Id.) Further, Plaintiff has failed to submit sufficient evidence to suggest that such different positions are sufficiently similar as to render them comparable positions. See Mitchell, 964 F.3d at 583. There is also insufficient evidence that the two shared the same supervisor or were subject to the same standards. Additionally, as previously discussed, since Plaintiff was not of retirement age at the time of her termination from employment, Plaintiff is not similarly situated to an individual who was allowed to voluntarily retire in lieu of termination. See Nelson, 2 Fed. App'x at 431; see e.g., Ramon, 153 F. App'x at 259-60.

Finally, Plaintiff argues that she is similarly situated to George Sims. It is undisputed that Sims was an African-American Crew Chief employed by Defendant. (Jan. 11, 2009 Treadwell Dep. 27; Def.'s SOF 31; Pl.'s Resp. to Def.'s SOF and Additional SOF 31.) In her affidavit, Plaintiff states that Sims "was allowed to demote after performance issues and then retire soon afterwards." (Treadwell Aff. ¶ 17.) In her deposition, Plaintiff testified that Sims had many performance issues noted in his personnel file, including "weight-and-balance issues" and other safety violations that Plaintiff believes to be more deserving of discipline than her actions during the ice storm. (Jan. 11, 2009 Treadwell Dep. 66-69.) She further testified that Sims was allowed to retire in 2007 or 2008. (Id. at 69.) Plaintiff has failed to present sufficient evidence of Sims' specific conduct such that the Court may consider whether Sims and Plaintiff engaged in similar misconduct. Further, Sims and Plaintiff were employed in different positions—Crew

Chief and Customer Service Manager, respectively—and there is insufficient evidence in the record to suggest that these different positions are sufficiently similar as to render them comparable positions. See Mitchell, 964 F.3d at 583. Nor is there evidence to suggest that the two shared the same supervisor or were subject to the same standards. Therefore, the Court cannot conclude that Sims and Plaintiff are similarly situated.

Because Plaintiff cannot demonstrate that background circumstances exist supporting the suspicion that Defendant discriminates against the majority and because Plaintiff cannot show that she was treated differently than a similarly-situated, non-protected employee, Plaintiff has failed to establish the first and fourth prongs of her prima facie case of reverse race discrimination. Because Plaintiff cannot establish a prima facie case of race discrimination, the Court is not required to address the issue of pretext. However, assuming arguendo that Plaintiff had established a prima facie case, Defendant has articulated a non-discriminatory reason for its actions. Defendant cited Plaintiff's poor performance and poor leadership at the times at issue in this case as the basis for Plaintiff's termination from employment. Therefore, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's reverse discrimination claim.

### c. Breach of Contract

Defendant argues that it is entitled to summary judgment on Plaintiff's breach of contract claim because, Defendant contends, Plaintiff's employment with Defendant was at-ill. In Plaintiff's response to Defendant's motion for summary judgment, Plaintiff admitted all of Defendant's statements of undisputed material facts relating to her breach of contract claim and presented no argument to support her claim for breach of contract. Federal Rule of Civil Procedure 56(e)(2) states:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Plaintiff has failed to meet her obligation to respond to Defendant's motion on her breach of contract claim. The Court finds that no genuine disputes of material fact exist as to Plaintiff's breach of contract claim, and the Court **GRANTS** Defendant's motion for summary judgment on this claim as well.

Tennessee has long recognized the employment at-will doctrine. The doctrine establishes the right of either party to an employment contract to terminate the employment relationship with or without cause. Chism v. Mid-South Milling Co., Inc., 762 S.W.2d 552, 555 (Tenn. 1988). Thus, unless the employment contract contains a definite term of employment, "a discharged employee may not recover against an employer because there is no right to continued employment." Cantrell v. Knox County Bd. of Education, 53 S.W.3d 659, 662 (Tenn. 2001). "Under Tennessee law, what would otherwise be an at-will contract may be modified by specific language which evidences an intent to modify the existent employment contract." Shelby v. Delta Air Lines, 842 F. Supp. 999, 1006 (M.D. Tenn. 1993). An employer's rules and regulations can become a part of the employment contract if they contain "specific language showing the employer's intent to be bound." Rose v. Tipton County Pub. Works Dep't, 953 S.W.2d 690, 692 (Tenn. Ct. App. 1997) (citing Smith v. Morris, 778 S.W.2d 857, 858 (Tenn. Ct. App. 1988)). "Unless an employee handbook contains such guarantees or binding commitments, the handbook will not constitute an employment contract. . . . [I]n order for an employee handbook to be considered part of an employment contract, the language used must be phrased in binding terms, interpreted in the context of the entire handbook, and read in conjunction with any

other relevant material, such as an employment application." Id. (internal citations and quotations omitted).

Plaintiff's breach of contract claim is based on her employment application and Defendant's Rules of Conduct. Plaintiff's employment application states:

> I understand that my employment is not for a specific term and can be terminated by me or by the company at any time for any reason, with or without cause, with or without notice, its only obligation being to pay wages or salary earned by me to termination. . . . I understand that the above provisions of my employment may not be changed by oral representation or by any writing unless such writing is executed by both an authorized officer of the company and by me.

(Ex. L to Def.'s Mot. for Summ. J.) Defendant's Rules of Conduct state: "These principles provide a general guideline for the conduct of all Company personnel at every level of the organization. In addition, we have more detailed rules and regulations. Some more important ones have been listed below." (Ex. M to Def.'s Mot. for Summ. J.) The Rules of Conduct do not modify Plaintiff's status as an at-will employee because they are not "executed by both an authorized officer of the company" and by Plaintiff and because the specific language contained in the Rules of Conduct is insufficient to create a binding contract between Plaintiff and Defendant. See Rose, 953 S.W.2d at 692. To the contrary, the evidence indicates that Plaintiff was an at-will employee, whose employment Defendant could terminate at any time with or without cause.

### d.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment and dismisses Plaintiff's case with prejudice. Judgment shall enter accordingly.

**IT IS SO ORDERED,** this 9th day of June, 2010.

>   s/Bernice B. Donald
>   **BERNICE BOUIE DONALD**
>   **UNITED STATES DISTRICT JUDGE**